# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREG WELTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 12-cv-6837 |
| | ) | |
| CITY OF ELGIN, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Greg Welter, a former City of Elgin police officer, brought this action alleging violations of procedural and substantive due process against Defendants City of Elgin, Jeffrey Swoboda, William Cogley, Sean Stegall, and James Barnes. Defendants have moved to dismiss [11] Welter's complaint. For the reasons set forth below, the Court grants Defendants' motion to dismiss [11] and dismisses Plaintiff's § 1983 claims for alleged constitutional violations.

**I.  Background**

Plaintiff was a police officer with the City of Elgin for over twenty-nine years. Apart from a written reprimand early in his career, Plaintiff was never suspended or disciplined. While serving as a police officer, Plaintiff also was a partner in a real estate venture named Wasco Investment Corporation ("Wasco"). Debra Seitz ("Seitz"), another Wasco partner, worked with Plaintiff in running Wasco's day-to-day operations.

Tamara Welter, Plaintiff's ex-wife, also was a City of Elgin police officer. Plaintiff alleges that in November 2009, he discovered that Tamara was having an extra-marital affair with the City's Deputy Police Chief, Robert Beeter. According to the complaint, the City

conducted an investigation and determined that Beeter and Tamara Welter's relationship violated the City's policies. Beeter and Tamara each were suspended without pay for thirty days.

In August 2010, the City was informed through an anonymous letter that Plaintiff's business partner had requested that Plaintiff look up vehicle identification numbers ("VINs") of an automobile parked in the driveway of one of Wasco's real estate properties.[1] The letter included e-mails between Plaintiff and Seitz regarding the VINs. The letter and e-mails were then distributed among Defendants Cogley (Corporation Counsel for the City of Elgin), Swoboda (Chief of Police for the City of Elgin), Barnes (Professional Standard Officer for the City of Elgin), and Stegall (City Manager for the City of Elgin).[2]

On August 30, 2010, Defendants Swoboda and Barnes provided Plaintiff with copies of the anonymous letter and intercepted e-mails. Plaintiff admitted that he had obtained information based on the VINs that Seitz had requested. Chief Swoboda informed Plaintiff that he would be placed on immediate administrative leave and, because potential criminal conduct

---

[1] Plaintiff alleges that his ex-wife and Beeter accessed his e-mail account and sent the anonymous letter. Beeter and Tamara Welter are not defendants in this action; Welter has filed a separate federal action seeking damages for his ex-wife and Beeter's alleged interception of the e-mails related to this lawsuit. See *Seitz, et al. v. Beeter, et al.*, Case No. 11-cv-4893 (N.D. Ill.).

[2] Although the letter is not attached to the complaint, it is referenced in the complaint and central to the allegations contained in Plaintiff's complaint. It is well-established that a court may consider documents that are concededly authentic, referenced in a plaintiff's complaint, and central to a plaintiff's claims, even if those documents are not attached to the complaint. See *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) ("This court has been relatively liberal in its approach to the rule articulated in *Tierney* and other cases."); see also *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994) (upholding consideration of an agreement quoted in the complaint and central to the question whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture Associates v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir.1993) (admitting letters, to which the complaint referred, that established the parties' contractual relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 739 (7th Cir.1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA). In this instance, the allegations in Plaintiff's complaint put the letter and e-mails squarely before the Court; moreover, the allegations in the complaint are consistent with the letter and the e-mails.

was involved,[3] he had reported Plaintiff's conduct to the Illinois State Police and the State's Attorney's office. He also notified Plaintiff that he was reviewing Plaintiff's conduct to determine if disciplinary action was warranted. According to Plaintiff, Swoboda notified him that if Plaintiff retired immediately, there would be no further investigation. Plaintiff elected early retirement because he did not want to be charged with official misconduct and risk losing his pension benefits with such a charge. Swoboda and Barnes then confiscated Plaintiff's firearm and informed him that his retirement letter must be tendered by 1:00 pm that day. Plaintiff submitted his letter of resignation.

On August 24, 2012, Plaintiff filed a two-count complaint against Defendants City of Elgin, Jeffrey Swoboda, William Cogley, Sean Stegall, and James Barnes, alleging that he was forced to retire from his position with the Elgin Police Department. Specifically, Plaintiff alleges violations of his due process rights pursuant to 42 U.S.C. § 1983 against all Defendants.

## II.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint must satisfy the requirements of Rule 8. Fed. R. Civ. P. 8. First, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)

---

[3]  The City of Elgin Police Department has access to the Law Enforcement Data System ("LEADS"), which is to be used only by criminal justice agencies for criminal justice purposes. See 20 Ill. Admin. Code § 1240.80(a) (LEADS network and LEADS date shall not be used for personal purposes). Misuse of LEADS could constitute state and federal offenses. See, *e.g.*, 28 C.F.R. § 20.33 (using criminal history record information other than for criminal justice purposes would be considered a misuse of the system); 720 ILCS 5/33-3 (a public officer commits misconduct when he performs an act in excess of his lawful authority to obtain a personal advantage for himself or another).

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 550 U.S. at 579-80. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, quotation marks, and brackets omitted).

## III. Analysis

In Counts I and II, Plaintiff asserts § 1983 claims for violations of his due process rights.[4] Plaintiff maintains that he had a constitutionally-protected property and/or liberty interest in his continued employment in the position of police officer with the City of Elgin. He further maintains that he was deprived of due process of law prior to the deprivation of his property and/or liberty interest. Put more simply, Plaintiff claims that his retirement decision was coerced and involuntary because the City of Elgin advised him that it was going to conduct an

---

[4] In order to state a claim under § 1983, Plaintiff must allege that Defendants were acting under color of state law when they deprived him of a constitutional right. See *Estate of Sims ex rel Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone, Illinois,* 483 F.3d 454, 457 (7th Cir. 2007)). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey,* 327 F.3d 485, 488 (7th Cir. 2003) (citing *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997)). To allege a § 1983 violation, Plaintiff must do more then make a general allegation that his constitutional rights were violated; he must allege a deprivation of a specific constitutional right. See *Trautvetter v. Quick,* 916 F.2d 1140, 1148 (7th Cir. 1990) (citing *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 379 (7th Cir. 1988)).

investigation into alleged unlawful activity by Plaintiff. As set forth below, Plaintiff's complaint fails to sufficiently allege a due process claim.

*1. Procedural Due Process*

Plaintiff alleges that Defendants deprived him of his right to be employed. The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. See *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To assert a violation of the Due Process Clause, Plaintiff must be able to show that he had a "property interest" and that he was deprived of this interest without due process of law. See *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood,* 426 U.S. 341, 343 (1976)). Specifically, Plaintiff's due process claims turn upon whether he had a property right in his position as a police officer with the City of Elgin.

To demonstrate that he was deprived of a protected interest, Plaintiff "must first establish that he had a property interest * * * of the sort that the Constitution protects." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For example, in the context of fired public employee bringing a procedural due process claim against his employers, the Seventh Circuit has stated that "[a] property interest in continued employment 'can be created in one of two ways, (1) by an independent source such as state law securing certain benefits; or (2) by a

5

clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (citing *Phelan*, 347 F.3d at 681). To support a due process claim in the context of public employment, the Seventh Circuit held that the plaintiff must have an "entitlement to continued employment," such as a collective-bargaining agreement. *Palka*, 623 F.3d at 452 (citing *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988); *Krieg v. Seybold*, 481 F.3d 512, 519-20 (7th Cir. 2007)). Plaintiff bears the burden of proving that he had a property interest in his employment as a City of Elgin police officer. See *Krieg v. Seybold,* 481 F.3d 512, 520 (7th Cir. 2007) (holding plaintiff bears the burden of showing that he had a property interest in his job arising out of a state statute, state or municipal regulations, or a contract with a public entity).

While the Court accepts all well-pleaded facts in the complaint as true, the Court does not have to accept as true conclusory statements of law or unsupported conclusions of fact. See *Snodderly v. R. U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 896 (7th Cir. 2001). Simply claiming a property right in one's job without facts to support the naked conclusion is not enough to sufficiently plead a property interest. See *Lee v. County of Cook,* 862 F.2d 139, 141-42 (7th Cir. 1988) (holding that to assert a property interest a plaintiff must allege enough facts to show that she "has a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause"). Here, Plaintiff has alleged nothing beyond the conclusory assertion that he had a "constitutionally protected property interest in his employment as a police officer." Notably, he has not cited or identified any state statute, state or municipal regulation, or any contract that allegedly created this right. Pleading without any factual enhancement identifying the alleged source of the permanent employment has been found insufficient to state a claim. *Krieg*, 481 F.3d at 520 ("Accordingly, without some specific promise of employment, the CBA

6

did not provide Krieg with a property interest."); *Collins v. Board of Educ. of North Chicago Community Unit School Dist. 187*, 2011 WL 2143115, *8 (N.D. Ill. May 31, 2011) (dismissing property right claim on Rule 12(b)(6) motion, finding that "[b]ecause a property interest is required to state a cause of action for a Due Process violation and Plaintiff has failed to allege facts from which a property interest can be conferred, Plaintiff has failed to state a due process claim."); *Allison v. Bd. of Educ. of the Plainfield Cmty. Consolidated Sch. Dist. No. 202*, 2011 WL 2292306, *3 (N.D. Ill. June 7, 2011) (dismissing property right due process claim on Rule 12(b)(6) motion where plaintiff failed to identify a contract provision that demonstrated a property right in continued employment); *Baylor v. Gary Public Library*, 2011 WL 1526950, *4 (N.D. Ind. April 20, 2011) (dismissing property right due process claim on Rule 12(b)(6) motion where plaintiff failed to allege any statutory, contractual or other basis showing that he was anything other than an at-will employee).

Even if Plaintiff could sufficiently allege a protectable property interest – indeed, for purposes of their motion to dismiss, Defendants "assume[d]" that Plaintiff sufficiently alleged a protectable property interest – he also would be required to establish that he was deprived of that property interest. Although an "involuntary resignation" may form the basis of a due process claim, an employee's decision to retire instead of facing adverse employment consequences, including employment termination, does not make that decision an involuntary one. See *Palka*, 623 F.3d at 453 (explaining that plaintiff's difficult choice between retiring with full benefits or appearing before an administrative agency with the risk of termination and loss of benefits did not turn a voluntary resignation into an involuntary decision); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) ("a resignation resulting from a choice between resigning or facing proceedings for dismissal is not tantamount to discharge by coercion without procedural review

7

if the employee is given sufficient time and opportunity for deliberation of the choice posed."). By contrast, a coerced retirement presents a "Hobson's choice" of resigning or facing "severe consequences" such as physical violence or criminal charges. *Palka*, 623 F.3d at 453; *Graehling v. Vill. Of Lombard, Ill.*, 58 F.3d 295, 297-98 (7th Cir. 1995) (describing a hypothetical gun to the plaintiff's head); *Patterson v. Portch*, 853 F.2d 1399, 1405-06 (7th Cir. 1988) (stating that a coerced resignation can occur when a plaintiff is forced to resign under the threat of being charged criminally if he refused to resign); *Lynd v. Bristol Kendall Fire Prot. Dist.*, 2012 WL 3069391, at *4 (N.D. Ill. July 26, 2012) (determining that threats against plaintiff's family if he did not resign were sufficient allegations of a coerced resignation to survive dismissal).

Plaintiff alleges that his early retirement was "coerced" because he was informed that Chief Swoboda had already discussed the matter with the Illinois State Police and spoken with someone in the State's Attorney's Office about possible official misconduct charges. Compl. ¶¶ 99-100, 111. In so pleading, however, Plaintiff admits that he was not "threatened" with anything because, at the time of the meeting, his misconduct already had been reported to appropriate State and County officials. The City simply informed him of the fact that reports had been made. Moreover, the City had a responsibility to investigate Plaintiff's conduct in using the LEADS system for personal use and simply told Plaintiff of its actions in pursuing that investigation. See 20 Ill. Admin. Code § 1240.80(a) ("The LEADS network and LEADS data shall not be used for personal purposes."); 20 Ill. Admin. Code § 1240.80(d) ("LEADS data shall not be disseminated to any individual or organization that is not legally authorized to have access to the information.").

Rather than face the internal investigation relating to his employment, and obviously hoping that his retirement might moot any possible criminal investigation, Plaintiff elected early

8

retirement because he "did not want to risk losing his pension." Compl. ¶ 127. This is not the Hobson's choice that turns a voluntary retirement into a coerced retirement. Here, Plaintiff was informed of what had already been done—that he was being placed on immediate administrative leave; that the City had an obligation to investigate; and that the Illinois State Police and State's Attorney's Office had been contacted. *Id.* ¶¶ 99-100, 108, 111, 116. Plaintiff had the option of proceeding with the internal employment investigation or electing to retire (which in his judgment might minimize the risk to his pension benefits). Plaintiff was not, however, told that if he did not retire, Defendants were going to contact the State's Attorney's Office; rather, those entities already had been contacted due to the City's obligation to investigate an employee's personal use of the LEADS system.

The Seventh Circuit's decision in *Palka* is directly on point. In *Palka*, the plaintiff was summoned to a meeting where his badge and firearm were taken, and he was placed on a suspension, pending a Merit Board hearing. *Palka*, 623 F.3d at 451. Later, the chief of the sheriff's department told the plaintiff that if he retired the Merit Board hearing would "go away" and that he would receive full retirement benefits. *Id.* The Seventh Circuit held that deciding between retiring and preserving his benefits or facing an investigation that could possibly lead to termination was not a coerced retirement:

> No doubt [plaintiff] was confronted with a difficult choice when the disciplinary charges were lodged against him and the Merit Board hearing loomed. He could retire with full benefits or appear before the Board and potentially be vindicated; the latter option, however, obviously risked termination and loss of his benefits if the charges were substantiated. But this is not the kind of choice that makes an otherwise voluntary resignation involuntary.

Id. at 453.[5] Plaintiff's decision here likewise does not convert his retirement election into an involuntary one. Plaintiff made a considered choice between retiring or facing the music for his admitted code violation. He now appears to regret his decision, but his regret does not turn his decision into an involuntary one. Plaintiff's procedural due process claim fails as a matter of law. See *Dusanek*, 677 F.2d at 543 ("it is not a deprivation of due process of law to be put to the option of defending oneself in a proper dismissal hearing or voluntarily accepting a change in one's job status").[6]

---

[5] Additionally, the plaintiff in *Palka* was actually told that he would be referred for criminal prosecution unless he retired, and then was told his investigation would "go away" if he retired. See *Palka*, 623 F.3d at 451 ("The detectives told Palka they would refer the telephone call incident to the Cook County State's Attorney for possible criminal prosecution unless Palka voluntarily resigned as a Sheriff's Deupty."). Thus, the facts in *Palka* are arguably more coercive than here, and the Seventh Circuit still affirmed the district court's dismissal of the plaintiff's claims for failure to state a Fourteenth Amendment claim.

[6] The Court notes that had Plaintiff chosen not to retire and instead attempted to clear his name, he could have availed himself of the due process protections available to him by utilizing the grievance and arbitration procedure established in a City of Elgin ordinance. Under a City of Elgin ordinance, Plaintiff had a grievance and arbitration procedure available to him. See Elgin Ord. 2.52.160 ("Discipline for * * * police lieutenants * * * shall also be subject to applicable grievance procedures in the then current city personnel manual which in cases involving a suspension of more than five (5) days or the removal or discharge * * * shall include arbitration"); Elgin Personnel Manual Section 15.01 (providing that police lieutenants can submit a grievance to their supervisor, or to the City Manager, in the event of termination or a suspension of more than five days, and receive a written decision within ten (10) working days and that if the employee is not satisfied with the decision of the City Manager, the employee can refer the matter to arbitration). Thus, Plaintiff could have filed a grievance regarding the investigation into his LEADS violations or any employment action resulting from that investigation. He likewise could have challenged a suspension or employment termination through the grievance procedure and, ultimately, before a neutral arbitrator. Instead, weighing the risks and options, Plaintiff chose to retire and forgo the due process procedures available to him. In view of these available procedures, Plaintiff's claim that he was deprived of procedural due process smacks of a self-inflicted wound. *Palka*, 623 F.3d at 453 (because due process protections were available through a disciplinary process, employer could not be held liable when plaintiff chose not to avail himself of its protections); see also *Dusanek*, 677 F.2d at 543 ("[It is logical] that a state cannot be held to have violated the due process requirements when it has made procedural protections available and plaintiff has simply refused to avail himself of them. Because the procedural protections existed, the state cannot be accused of withholding them."); *Hudson*, 374 F.3d at 563 (explaining that grievance procedure that permitted multiple steps to challenge decision and mediation, if employee was not satisfied with grievance procedure, provided adequate due process protections).

### 2. *Substantive Due Process*

Plaintiff's substantive due process claim also fails. This sort of claim is limited to violations of fundamental rights (see *Belcher v. Norton,* 497 F.3d 742, 753 (7th Cir. 2007)), and employment-related rights are not fundamental; an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate. See *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010); *Montgomery v. Stefaniak,* 410 F.3d 933, 939 (7th Cir. 2005). Plaintiff has not pleaded an additional constitutional violation or claimed that state-law remedies were inadequate. He therefore has failed to state an actionable substantive due-process claim.

Plaintiff's substantive due process claim also fails because Defendants' conduct falls far short of shocking the conscience. "The Due Process Clause protects citizens from abuses of power by executive officials * * * but official misconduct will rise to the level of a constitutional violation *only if it shocks the conscience*." *Palka*, 623 F.3d at 453-54 (emphasis added). In *Palka*, the plaintiff maintained that tracing the phone call he made to the CPD officer's childrens' school and then travelling outside of their jurisdiction to visit him at home one evening qualified as conscience-shocking misconduct by the officers. The Seventh Circuit disagreed. "The threshold for this kind of due-process claim is high; many forms of governmental misconduct are excluded." *Id.* at 454 (citing *Tun*, 389 F.3d at 903 ("It is one thing to say that officials acted badly, even tortiously, but – and this is the essential point – it is quite another to say that their acts rise to the level of a constitutional violation."); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("Of course, every official abuse of power, even

if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation.")). Here, there are no allegations that come close to conscience-shocking.

* * *

In filing this lawsuit, Plaintiff maintains that the City of Elgin and its employees were constitutionally barred from reading an anonymous letter[7] and acting upon evidence of Plaintiff's allegedly unlawful conduct. In essence, Plaintiff insists that the City should have ignored misconduct that Plaintiff *admitted* both during the August 2010 meeting and in his complaint. The case law holds otherwise, and in fact permits Defendants to handle the situation as they did, putting Plaintiff to an admittedly "difficult choice." *Palka*, 623 F.3d at 453. Faced with that choice, Plaintiff chose to retire from his employment, rather than proceed with an investigation into his unlawful conduct that could lead to discipline or termination or a violation of the LEADS statute. If Plaintiff's arguments stated a claim, a public employer would be helpless when faced with evidence of employee misconduct. But the case law clearly establishes that this type of employer action—initiating an investigation and presenting potential outcomes to an employee—does not amount to an unconstitutional coercive resignation. *Palka*, 623 F.3d at 453 (stating that employer did not violate plaintiff's due process rights when it presented plaintiff with option of retiring or facing a Merit Board hearing); *Dusanek*, 677 F.2d at 543 ("resignation

---

[7] To the extent Plaintiff attempts to inject, in his response brief, a Fourth Amendment search and seizure claim based on Defendants' review of an anonymous letter and the attached e-mails, this claim completely misses the mark. Plaintiff affirmatively alleged in his complaint that Tamara Welter and Robert Beeter, not any Defendant, accessed and searched his e-mail. Further, Plaintiff cites no authority for the proposition that Defendants violated his Fourth Amendment rights by reading or using documents that they received through an anonymous letter. Indeed, case law squarely refutes Plaintiff's position. See *U.S. v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011) ("The Fourth Amendment generally does not apply to searches and seizures by private parties."); *U.S. v. Crowley*, 285 F.3d 553, 558 (7th Cir. 2002) ("The Fourth Amendment is not triggered when a private party initiates a search and contacts police after evidence is discovered."); *U.S. v. Hall*, 142 F.3d 988, 993 (7th Cir. 1998) ("Although individuals have a right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures by the Government, private searches are not subject to constitutional restrictions.").

resulting from a choice between resigning or facing proceedings for dismissal is not tantamount to discharge by coercion"). As his complaint establishes, these are the alternatives that Plaintiff faced. See Compl. ¶¶ 107-08, 116, 122-23. He could remain employed and allow the employment-related proceedings to run their course (i.e., after the investigation, no action could be taken by the City, or the City could take action which Plaintiff then could challenge through the statutory grievance and arbitration procedure) or he could decide to avoid the risk that he might lose his job (and his pension with it) and resign. Because that is not an unconstitutional choice, Plaintiff's claims fail as a matter of law.

## IV. Conclusion

For these reasons, the Court grants Defendants' motion for dismiss [11] and dismisses Plaintiff's claims. The Court also grants Plaintiff's motion for leave to file a sur-reply [24], as the Court considered the arguments raised in the sur-reply in ruling on Defendants' motion to dismiss.

Dated: March 29, 2013

_____
Robert M. Dow, Jr.
United States District Judge